UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David S.,[1]

Plaintiff,

v.

Andrew Saul,
Commissioner of Social Security,

Defendant.

Case No. 19-cv-3137 (ADM/LIB)

**REPORT AND RECOMMENDATION**

Plaintiff, David S. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying his application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 12, 14], and the Court took the matter under advisement on the written submissions.

For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 12], be **GRANTED in part** and **DENIED in part**, and that Defendant's Motion for Summary Judgment, [Docket No. 14], be **DENIED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by his name only his first name and last initial are provided.

**I.      Procedural History**

On January 20, 2017, Plaintiff filed a Title II application for a period of disability and disability benefits, as well as, an application for supplemental security income. (Tr. 11).[2] Plaintiff alleged that his disability began on January 4, 2016. (Tr. 11). The Commissioner initially denied Plaintiff's present claims on April 27, 2017, and again, upon reconsideration, on December 29, 2017. (Tr. 11). On January 10, 2018, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 11).

Administrative Law Judge Micah Pharris (hereinafter "ALJ") conducted a hearing on August 6, 2019, at which Plaintiff was represented by counsel. (Tr. 11). Plaintiff and an independent vocational expert, Michael Stern, (hereinafter "IVE Stern") testified at the hearing. (Tr. 11). On August 2, 2019, the ALJ issued a decision denying Plaintiff's request for disability benefits. (Tr. 11–25). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 25).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–6). Subsequently, on October 13, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On December 20, 2019, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 12, 14], and the Court took the matter under advisement on the written submissions.

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 11], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 90 exhibits. (See, Administrative Record [Docket No. 11]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

## II. Standards of Review

The Social Security Administration must find a claimant to be disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 416.1407–416.1409. A claimant who is dissatisfied with the reconsidered decision may then obtain review by an ALJ. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 416.1429.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairment, residual functional capacity ("RFC"), age, education, and work experience. See 20 C.F.R. § 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the

> claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); see, Johnson v. Chater, 108 F.3d 942, 944 (8th Cir. 1997); Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 416.1467-416.1482. The decision of the Appeals Council — or, if the request for review by the Appeals Council is denied, the decision of the ALJ — is final and binding upon the claimant unless the matter is appealed to federal district court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481. In this case, the Appeals Council denied Plaintiff's request for review on October 31, 2019. (Tr. at 1–4).

### C. Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."

Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision (through the ALJ), the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

At the same time, however, "a reviewing court cannot search the record to find other grounds to support the decision" of the ALJ. Shanda v. Colvin, No. 14-cv-1838 (MJD/JSM), 2015 WL 4077511, at *29 (D. Minn. July 6, 2015) (quoting Mayo v. Schiltgen, 921 F.2d 177, 179

(8th Cir. 1990)). "A court must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change its decision." Id.

The claimant bears the burden under the Social Security Act of proving that he is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

### D. Decision Under Review in the Present Case

The ALJ in this matter made the following determinations as he proceeded through the five-step disability evaluation process.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 4, 2016, the alleged onset date of disability. (Tr. 13). Plaintiff does not contest this finding.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical, lumbar, and thoracic degenerative disc disease; status post remote lumbar fusion surgery and cervical discectomy and fusion surgery; migraines; and bilateral carpal tunnel syndrome. (See Tr. 14). Several additional impairments—including asymptomatic small vessel disease, kidney stones, hypertension, hyperlipidemia, diabetes, gastroesophageal reflux disease, obstructive sleep apnea, obesity, Barrett's esophagus, depression, and chronic pain syndrome—were found by the ALJ to be non-severe. (See Tr. 15–17). Plaintiff does not contest this finding.

6

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ expressly considered listing 1.04 (for spinal impairments), listing 11.02 (for migraines), and listing 11.14 (for bilateral carpal tunnel syndrome). Plaintiff does not challenge the finding that his spinal impairments and bilateral carpal tunnel syndrome did not meet or medically equal the severity of a listed impairment, but as explained below, he contends that the ALJ's conclusion regarding migraines (listing 11.02) was not adequately supported.

At step four, the ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.976(b) except: the individual may never climb ropes, ladders, or scaffolds; and may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The individual may never reach overhead and may frequently reach in all other directions. The individual may frequently handle and finger. The individual may have no exposure to vibration, unprotected heights, or hazards.

(Tr. 16–17). The bulk of the challenges raised by Plaintiff relate to this step-four RFC finding, including (1) whether the RFC is sufficiently particularized; (2) whether certain aspects of the RFC are supported by substantial evidence in the record as a whole; and (3) whether the opinions of medical sources Dr. Kimberly Ellias and Dr. Shane Gustafson were appropriately given little weight by the ALJ.

At step five, the ALJ determined that, based on the RFC assigned at step four and quoted above, Plaintiff would be capable of performing his past relevant work as a sales representative. (See Tr. 23–24). Because Plaintiff believes that the RFC was incorrectly determined, he regards this step-five conclusion as erroneous.

**III.     Analysis**

Plaintiff challenges the ALJ's decision on several grounds. This Court finds one of these arguments sufficiently convincing to warrant remand: The ALJ's finding that Plaintiff would be capable of maintaining an ordinary five-day, eight-hour workweek is neither adequately explained nor supported by substantial evidence in the record as a whole. Remand is required to determine the residual capacity of Plaintiff to regularly complete an ordinary workweek. Before turning to that issue, however, this Court will first address another of the other arguments raised by Plaintiff, both in the interests of completeness and because an analysis of this other argument will help put into context the argument that this Court finds to be compelling.

**A.  Step Three Analysis**

At step three of the five-step sequential analysis, the ALJ must consider "whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations . . . ." Dixon, 353 F.3d at 605. If the claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments, the claimant "must be held disabled, and the case is over." Jones v. Barnhart, 335 F.3d 697, 699 (8th Cir. 2003); see, 20 C.F.R. § 404.1520(d).

In this case, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments. (Tr. 16). The ALJ expressly discussed three listed impairments in arriving at this conclusion: listing 1.04 (spinal impairments), listing 11.02 (migraines),[3] and listing 11.14 (bilateral carpal tunnel

---

[3] Listing 11.02 applies on its face to epilepsy disorders, not migraines; primary headache disorders themselves are not a listed impairment. Social Security Ruling 19-4p, however, provides that the impairments caused by a primary headache disorder may medically equal a listed impairment, and listing 11.02 "is the most closely analogous listed impairment for [a medically determinable impairment] of a primary headache disorder." Social Security Ruling 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). Accordingly, listing 11.02 was appropriately considered by the ALJ.

syndrome). Plaintiff does not contest the ALJ's conclusion at step three with respect to his spinal impairments or bilateral carpal tunnel syndrome, but he does argue that the ALJ's step-three analysis was insufficient to support the conclusion that his migraine disorder did not rise to the level of a listed impairment. See, Scott v. Astrue, 529 F.3d 818, 822–23 (8th Cir. 2008) (requiring remand where "the ALJ failed to support his finding that [the claimant] did not meet or medically equal the severity of a listed impairment.").

Listing 11.02 (as relevant to this case) requires a claimant to establish migraines "occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment," Social Security Ruling ("SSR") 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019), with the following factors of severity taken into account:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

Id. Alternatively, a claimant's migraine impairment may meet listing 11.02 despite less frequency ("occurring at least once every 2 weeks for at least 3 consecutive months") if the migraines result "in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." Id.

In examining whether the restrictions caused by Plaintiff's migraine disorder met or medically equaled a listing, the ALJ concluded that "[l]isting 11.02 is not equaled because migraines are not well documented in terms of frequency or severity. Further, the records note significant improvement following cervical fusion and discectomy." (Tr. 16). Plaintiff argues that this two-sentence analysis was insufficient to allow for meaningful appellate review.

This Court disagrees. This is not a case in which the ALJ's written opinion is so lacking as to leave the claimant (and the reviewing court) to wonder whether the appropriate listing was considered at all. See, e.g., Mann v. Colvin, 100 F. Supp. 3d 710, 719 (N.D. Iowa 2015) (finding that the failure to consider an appropriate listing constituted a basis for remand). The ALJ's analysis of listing 11.02, although succinct, clearly establishes that the listing was considered, and the basis for the step-three decision—that the medical record did not show that Plaintiff met the specific requirements of listing 11.02—is similarly clear from the face of the written opinion.

To be sure, the fact that the ALJ reached a decision at step three and that the decision is sufficiently clear to permit appellate review does not, by itself, protect the step-three decision from remand. The ALJ's conclusion at step three must still be supported by substantial evidence on the record as a whole. See, e.g., Kemnitz v. Astrue, No. 12-cv-285 (SRN/LIB), 2013 WL 791789, at *10–12 (D. Minn. Feb. 1, 2013). After review of the full medical record, though, this Court concludes that the ALJ's conclusions are in fact supported by substantial evidence. As explained above, listing 11.02 includes both a specific durational requirement and a specific severity requirement; the claimant's migraines must occur with sufficient frequency (at least once every week or two weeks, depending on severity) and must be sufficiently debilitating. Although the administrative record amply demonstrates that Plaintiff suffered from migraines for most of the relevant period, (see, Tr. 525, 585, 686, 691), the frequency and severity of those migraines is not

10

demonstrated by the record. This is especially true of the period following a surgery completed in August 2017, after which the migraine condition appears to have intermittently improved for a short period of time. Plaintiff bore the burden of establishing that his condition met the specific parameters of listing 11.02. See, Cronin v. Saul, 945 F.3d 1062, 1066 (8th Cir. 2019) (noting that the claimant "bears the burden at step three of showing that his impairments meet or equal an impairment described in the listings."). The medical record simply does not support that his condition met or medically equaled the specific requirements of that listing. Plaintiff fails to point to any medical evidence in the record demonstrating that his headaches were of a sufficiently sever and frequent nature to meet or medically equal listing 11.02.[4]

Accordingly, the Court finds that the ALJ's decision at step three was supported by substantial evidence in the record.

### B. Residual Functional Capacity

After determining at step three that Plaintiff did not have a condition that met or medically equaled one of the listed impairments, the ALJ at step four assigned the following RFC to Plaintiff:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.976(b) except: the individual may never climb ropes, ladders, or scaffolds; and may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The individual may never reach overhead and may frequently reach in all other directions. The individual may frequently handle and finger. The individual may have no exposure to vibration, unprotected heights, or hazards.

---

[4] Plaintiff did testify at the hearing before the ALJ that he continued to have headaches every day, although he further testified that those headaches were not as severe as they had been prior to his August 2017 surgery. (Tr. 95–96). But as noted by the ALJ during the step-four analysis, this testimony is belied by the medical record, particularly the post-surgery medical record, which is inconsistent with testimony of constant, debilitating headaches. (Tr. 18). Hearing testimony may be appropriately discounted where it is inconsistent with the medical record. See, e.g., Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014).

(Tr. 16–17). Plaintiff challenges this RFC on several grounds, including that the ALJ wrongly disregarded opinion evidence contrary to the RFC, that the RFC does not adequately take into account certain limitations found in the medical record, and that the RFC is insufficiently particular regarding his exertional limitations (especially limitations on his ability to sit, stand, and walk during the workday).

Plaintiff argued before the ALJ, and he argues again in his briefing before this Court, that his impairments prevent him from working a full work schedule. The briefing before this Court overwhelmingly focuses on one particular aspect of that question: Whether Plaintiff's migraine impairment would interfere with his ability to work a regular five-day, eight-hour schedule.

The RFC includes no limitation on Plaintiff's ability to work a normal five-day, eight-hour workweek. Despite the ALJ's lack of discussion, this was a question of critical importance.

According to the testimony of IVE Stern, the vocational expert who testified at the administrative hearing in this matter, even minimal limitations in the ability of Plaintiff to maintain a normal schedule would likely preclude him from being able to return to his past employment. IVE Stern testified that a hypothetical employee might be permitted to miss one day of work per month as a sales representative (the past relevant work of Plaintiff), but absolutely no more than that. (See, Tr. 107) ("Q: What if it was more than one day per month including a partial missed day like coming in late or leaving early? A: Then I think ultimately they would not be able to . . . maintain employment."). Nor could a hypothetical employee miss as much as an hour of work each day and expect to maintain employment as a sales representative. (See, Tr. 109–10).

This Court has already concluded that the ALJ's finding that the migraine disorder of Plaintiff did not meet or medically equal a listed impairment was supported by substantial evidence. But to find that the migraine disorder does not rise to the level of a listed impairment is

far different than to say that the migraine impairment does not affect Plaintiff's ability to work <u>at all</u>.

Nevertheless, the only concession for the migraine disorder made by the ALJ in determining the RFC was that Plaintiff would be precluded from reaching overhead. (<u>See</u> Tr. 22). The ALJ's analysis of why Plaintiff could be expected to work a normal schedule despite his migraines is severely lacking, especially considering the importance of the issue (again, according to the vocational expert, even small limitations in the ability of Plaintiff to complete an ordinary workweek could prevent him from performing past relevant work).

Defendant attempts to salvage the decision of the ALJ by pointing to four statements in the ALJ's written opinion that, Defendant argues, support the conclusion that Plaintiff could complete an ordinary workweek and which are supported by substantial evidence in the record as a whole.[5] The Court finds unpersuasive Defendant's argument here.

First, Defendant points to the fact that the ALJ twice noted in his written opinion that "migraines are not well documented in terms of frequency or severity" in Plaintiff's medical record. (Tr. 17–18). There is some truth to this; the <u>exact</u> frequency and <u>exact</u> severity of the migraines suffered by Plaintiff are not entirely clear from the medical record, especially for the period following his August 2017 surgery, after which his migraines seem to have initially shown some limited improvement. But the medical record is sufficiently clear that, except for a period of a few months immediately following the surgery, Plaintiff suffered from relatively consistent headaches throughout the period at issue. (<u>See, e.g.</u>, Tr. 660, 669, 722, 932, 965, 1099).

---

[5] The ALJ did not make any of these four statements in a discussion related to Plaintiff's ability to work a normal five-day, eighth-hour workweek. Rather, Defendant here points to statements made by the LAJ in other portions of his analysis.

13

Second, Defendant highlights that the ALJ noted that the condition improved following the August 2017 surgery. (Tr. 20).[6] But even this improved post-surgery condition was adjudged by the ALJ to be severe at step two of the five-step analysis. (See, Tr. 14). This step-two finding is not determinative of the RFC conclusion; the migraine disorder may be found to be severe at step two with no corresponding RFC limitation. See, Gann v. Colvin, 92 F. Supp. 857, 884–85 (N.D. Iowa 2015). By the same token, however, the fact that an impairment has "improved" does not, by itself, establish that the impairment imposes no functional limitations. The conclusion simply does not follow from the premise.

Third, Defendant relies on the ALJ mentioning that Plaintiff acknowledged participating in daily living activities such as driving, shopping, and managing his finances. (See, Tr. 15, 316–319).[7] There is, however, nothing inconsistent with the acknowledgement that Plaintiff can complete regular activities and the argument that he might still be unable to complete a regular, consistent work schedule. That Plaintiff could continue to plan his daily living activities around his impairments does not necessarily mean that he could adhere to a structured, five-day, forty-hour workweek, where such flexibility might not be so readily accommodated. (Tr. 110) (providing testimony of vocational expert). Defendant's argument here is unpersuasive.

Fourth, Defendant argues that the ALJ adequately accounted for the migraine impairment by restricting Plaintiff in the RFC from reaching overhead. (Tr. 16–17). There is, to be sure, at

---

[6] The ALJ used the terms "headaches" and "migraines" interchangeably throughout his written opinion, and this Court has largely done the same to this point, but both the medical record and the hearing testimony of Plaintiff suggest that two separate conditions have been conflated. Prior to the August 2017 surgery, Plaintiff complained of very frequent migraines typified by a feeling of "pressure" on the head. (See, Tr. 1099). By his own admission at the administrative hearing, those migraines seem to have dissipated following the surgery. (See Tr. 95–96). The medical record reflects this improvement as well, and the ALJ appears to have used these statements in the medical record as his basis for concluding that Plaintiff no longer suffered migraines, or at least that the migraines could be substantially curtailed. But the medical record also makes clear that while one aspect of the condition (the "pressure" type headache) improved, the other remained. (See, e.g., Tr. 1099) (distinguishing the two conditions).

[7] The ALJ's discussion of the daily living activities of Plaintiff came in the context of evaluating the extent of his mental impairments, not his physical impairments. (Tr. 15). Plaintiff does not argue before this Court that his mental impairments rise to the level of severe.

14

least one instance of evidence in the record that overhead reaching <u>exacerbated</u> the migraines suffered by Plaintiff, (<u>See</u> Tr. 333), but there is nothing in the medical record showing that this would be sufficient to <u>alleviate</u> the problem entirely. Indeed, the implied conclusion of the ALJ that, because the migraines stemmed from cervical impairments, those migraines could be controlled by sufficiently limiting the reaching movements of Plaintiff appears to be entirely speculative. It is not the role of the ALJ to draw his own medical conclusions from the administrative record. <u>See, e.g.</u>, <u>Back v. Barnhart</u>, 63 Fed. App'x 254, 259 (7th Cir. 2003) (per curiam) (citing <u>Green v. Apfel</u>, 204 F.3d 780, 782 (7th Cir. 2000)); <u>Ransom v. Heckler</u>, 715 F.2d 989, 994 (5th Cir. 1983).

In short, none of the statements of the ALJ which Defendant highlighted represents substantial evidence supporting the ALJ's finding that Plaintiff could be expected to work eight hours each day and five days each week (excepting a single day each month), notwithstanding his impairments. There is one other complication that makes this Court's review of the ALJ's RFC determination that Plaintiff could be expected to work an ordinary workweek especially difficult. As noted above, the ALJ is correct that the medical record is not terribly precise about the types of workplace limitations that could be expected going forward due to migraines. But the question at issue, despite the focus of the briefing, is not only whether migraines could be expected to limit Plaintiff from working a full schedule. The question, instead, is whether substantial evidence in the record as a whole supports the conclusion that Plaintiff could be expected to work, almost without exception, five days each week and eight hours each day. The continuing migraines of Plaintiff provide one reason for believing he cannot, and, as this Court has just explained, the ALJ's account of why migraines could not be expected to limit the ability of Plaintiff to work do not pass scrutiny under the applicable standards of review. In addition, the administrative record

demonstrates still other grounds on which to conclude that Plaintiff likely cannot be expected to work a full eight hours a day, five days a week schedule week after week. In his briefing before this Court, Plaintiff identifies one such limitation: as he testified at his hearing, Plaintiff has frequent medical appointments for his many conditions, the timing of which (he avers) he cannot control. (See, Plf.'s Mem., [Docket No. 13], at 10) (discussing hearing testimony at Tr. 97–98). The ALJ did not discount (or even reference) this testimony, and the extensive administrative record in this matter tends to confirm that frequent medical appointments due to severe impairments, including migraines, will remain necessary for Plaintiff going forward, though to what extent is unclear.

The fact that Plaintiff might be expected to take time off from work in the future does not mean, by itself, that he cannot perform his past relevant work as a sales associate, even in light of the testimony of the vocational expert that Plaintiff could not take much time off and expect to keep his job. See, e.g., Greenwade v. Saul, No. C18-119 (LTS), 2020 WL 1318793, at *8 (N.D. Iowa Mar. 20, 2020) (collecting cases). Similarly, the fact that migraines might occasionally interfere with the ability of Plaintiff to keep a regular schedule does not, by itself, mean that he is unable to work as a sales representative. There is, however, presently no basis in the written opinion upon which this Court could base a reasonable conclusion that the ALJ actually considered how the various impairments and restrictions would or would not interact in causing Plaintiff to miss work.

The Commissioner, through the ALJ, must adequately explain his decisions and factual findings in order to permit the Court to determine whether substantial evidence supports the decision. See, Scott ex rel. Scott v. Astrue, 592 F.3d 818, 822 (8th Cir. 2008) (citing Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005)); Pettit v. Apfel, 218 F.3d 901, 903–04 (8th Cir. 2000).

The Eighth Circuit has held that a "failure to adequately explain . . . factual findings is 'not a sufficient reason for setting aside an administrative finding' where the record supports the overall determination." Scott, 592 F.3d at 822 (citing Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999)). Remand is appropriate, however, where the Commissioner's factual findings, considered in the context of the record as a whole, are insufficient to permit the Court to conclude that substantial evidence supports the Commissioner's decision. See, Scott, 592 F.3d at 822. In those cases where the Commissioner's factual findings and overall conclusions are insufficient for meaningful appellate review, remand is appropriate. See, Pettit v. Apfel, 218 F.3d 901, 903–04 (8th Cir. 2000).

To be sure, Plaintiff bears the burden of establishing that he cannot perform past relevant work. But "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). To the extent that the record was unclear regarding whether migraines would interfere with the ability of Plaintiff to maintain regular attendance at work, or was unclear regarding the likelihood that Plaintiff would need to miss work due to medical appointments, the ALJ should have solicited additional evidence—or, at a minimum, explained why expanding the administrative record would not be necessary. In the alternative, if the ALJ found the current record contained sufficient evidence to reach a decision on these issues, then the ALJ is required to provide at least some indication of what evidence he considered and explain his decision.

The Court has reviewed the entire record carefully, and it cannot conclude that substantial evidence on the record as a whole supports the ALJ's factual finding, decisions, or overall conclusion regarding Plaintiff's ability to work a normal workweek.[8] For the reasons discussed

---

[8] Because the Court recommends remand of the matter back to the ALJ to reevaluate and explain his findings with respect to Plaintiff's RFC, the Court need not address at this time Plaintiff's other arguments. See, Cuthrell v. Astrue,

17

above, the Court finds that based on the failings of the ALJ's decision, as discussed above, remand is appropriate.

On remand, the ALJ should consider the extent to which the impairments of Plaintiff, either singly or in combination, could be expected to cause him to miss work such that he could not maintain relevant past employment. Among the factors to be considered should include the extent to which the severe impairments of Plaintiff will require ongoing medical appointments that can be expected to cause him to be unable to complete an ordinary eight hours a day, five days a week work schedule.

## IV. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 12], be **GRANTED in part** and **DENIED in part**;[9]

2. Defendant's Motion for Summary Judgment, [Docket No. 14], be **DENIED**; and

---

702 F.3d 1114, 1117–118 (8th Cir. 2013). The ALJ's reconsideration of the record in reaching a determination regarding Plaintiff's ability to work eight hours a day for five days a week may alter his opinion as it relates to Plaintiff's other arguments.

[9] After determining that the Commissioner's decision is not supported by substantial evidence, a reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability if strong and evidence to the contrary is lacking." Id. Where there is conflicting evidence in the record, the Court should remand the case back to the Commissioner for further consideration. See, Id. In the present case, while it might be possible that Plaintiff will be entitled to benefits, on the present record, this Court cannot say that such a determination can be made as a matter of undisputed fact, and consequently, it declines to recommend reversal for an immediate award of benefits. Instead, the Court recommends this case be remanded to the Commissioner so that a determination may be made in a manner consistent with this Order and on the medical evidence in the record. Therefore, to the extent Plaintiff seeks an award of benefits from this Court or a remand for an award of benefits, as opposed to a remand to the Commissioner for further consideration, Plaintiff's Motion is **DENIED**.

3. The above matter be **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the opinion above.

Dated: January 25, 2021                     s/Leo I. Brisbois
                                            Hon. Leo I. Brisbois
                                            United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).